IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. |
| | ) | 11-00002-01-CR-W-ODS |
| JOSEPH M. CHAVEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## **REPORT AND RECOMMENDATION TO DENY**
## **DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress evidence seized from his vehicle on December 21, 2010, and the subsequent statement on the ground that the search was not incident to arrest and the statement is a fruit of the unlawful search. I find that the search of defendant's car was a lawful inventory search. Therefore, defendant's motion to suppress should be denied.

### *I.  BACKGROUND*

On December 21, 2010, defendant was arrested after having been observed speeding, crashing his car, and running from the scene. Defendant had an outstanding warrant at the time and was apprehended by a police canine. Because the car was inoperable as a result of the crash and had been stolen, officers arranged for the car to be towed and conducted an inventory search. During the search, officers discovered a loaded stolen .45 caliber handgun.

On January 4, 2011, an indictment was returned charging defendant with one count of possessing a firearm while an unlawful user of or addicted to methamphetamine and marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). On June 15, 2011, a superseding indictment was returned charging three counts of possessing a firearm while an unlawful user of or addicted to methamphetamine and marijuana, one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of carrying a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c).

On June 22, 2011, defendant filed the instant motion to suppress (document number 34). On July 11, 2011, the government filed a response (document number 43) arguing that the search of defendant's vehicle was a valid inventory search.

On July 18, 2011, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Stefan Hughes. The defendant was present, represented by Michael Walker. The following witnesses testified:

1. Officer Mark Laframboise, Independence, Missouri, Police Department

2. Officer Geoff Leap, Independence, Missouri, Police Department

In addition, the following exhibits were admitted:

P. Ex. 9   Independence, Missouri, Police Department general order policy for handling abandoned property and police towing policies

P. Ex. 13 Officer Leap's narrative of the incident on December 21, 2010

## *II.  EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1.   At approximately 1:30 a.m. on December 21, 2010, Officer Mark Laframboise of the Independence, Missouri, Police Department observed an Oldsmobile Cutlass bearing Kansas license plate XEU-554 speeding in the area of 23rd and Northern Street (Tr. at 20).  Officer Laframboise estimated the car was going between 60 and 80 miles per hour in a 40 mph zone (Tr. at 20).  Officer Laframboise was in a marked police car and activated his lights and siren (Tr. at 21).  Defendant, the driver of the Cutlass, did not stop (Tr. at 20-21).  Instead, he turned north on Northern from 23rd Street (Tr. at 21-22).

2.   Officer Laframboise pursued defendant for about one to two minutes but terminated the chase because it was too dangerous -- defendant was driving in excess of 100 miles per hour, he drove through every stop sign at every intersection, and he was driving recklessly (Tr. at 22-23, 33).  Officer Laframboise had given a vehicle description to dispatch and other officers were assisting (Tr. at 22, 33-34).

3. Officer Geoff Leap, in a marked police car, was in the area and assisted Officer Laframboise in the initial chase (Tr. at 37, 39). When Officer Leap first saw the car, he estimated it was going about 70 miles per hour on a residential street with 25 mph speed limit (Tr. at 38). Officer Leap stayed with defendant's car until it eventually came to a stop (Tr. at 48).

4. Officer Leap was the lead car in the pursuit at the time defendant attempted to turn northbound on Topping and slid onto a curb breaking an axle (Tr. at 41). The car slid up over a curb and came to a rest, and defendant bailed out of the vehicle (Tr. at 41). He looked at Officer Leap who ordered defendant to stop or he would release his police dog (Tr. at 42). Despite Officer Leap's warning several times, defendant took off running, so Officer Leap let his dog out of the car (Tr. at 42, 48). Officer Leap, Officer Edwards, and the dog chased defendant up a hill into a park, and then Officer Leap ordered the dog to apprehend defendant (Tr. at 42). The dog took defendant down at a fence toward the back of the park (Tr. at 42, 48). Officer Leap took the dog off defendant, and Officer Edwards put defendant in handcuffs (Tr. at 43, 49).

5. Officer Edwards did a pat down search and observed that defendant was wearing a bullet-proof vest, so the officers decided to look for a weapon (Tr. at 43, 49). Kansas City, Missouri, Police Officer Scott Nelson had previously arrived on

the scene (the chase ended in Kansas City) with his police dog, Spyk (Tr. at 49-51). Spyk performed an article search (Tr. at 51). An article search is where the dog is provided with something holding a fresh human scene, and then the dog sniffs out the human scent and alerts to an item bearing that scent by lying down next to the item (Tr. at 51). Spyk found a loaded Sig P220 handgun lying about ten feet away from where defendant had been taken into custody (Tr. at 43-44, 52). The gun had previously been stolen out of Blue Springs (Tr. at 57).

6. Officer Laframboise went to the intersection of 23rd and Topping and observed the Cutlass parked in the middle of the street in an angled position (Tr. at 23-24, 29). It had a broken axle and was not operable (Tr. at 24, 29, 41). The car was blocking the street; cars could not get around the Cutlass (Tr. at 24). At the time Officer Laframboise arrived, defendant was in an ambulance, and his passenger was in handcuffs standing with a sergeant (Tr. at 30).

7. Officer Laframboise checked the license plate through dispatch and learned it did not match the VIN of the car (Tr. at 24, 41). He then ran the VIN through dispatch and learned the vehicle had been stolen out of Raytown, Missouri (Tr. at 24, 41-42). The officers decided to tow the vehicle since it was stolen, which is in accordance with the Independence Police towing policy (Tr. at 25, 44-45).

8. The Independence, Missouri, Police Department towing policy states that, "Police towing of a vehicle from public property is authorized under the following conditions: Any abandoned property that is reported stolen or taken without the consent of the owner" (Tr. at 27; G. Ex. 9).

9. Because the car was going to be towed, an inventory search was to be conducted (Tr. at 27). Officer Leap did not want to release the car to the owner (as it had been stolen) without making sure there were no drugs in the car (Tr. at 52). He suspected there were because of the bulletproof vest, the holster and ammunition in the car, and the drug paraphernalia (Tr. at 52). His narcotics-trained police dog alerted on a backpack in the front passenger seat (Tr. at 45). Police recovered a spoon with residue and syringes from the backpack and a scale from under the front passenger seat (Tr. at 27-28, 32, 45, 52-54, 57).

10. Defendant was issued citations for failure to signal, six disobeying stop signs, eluding police, driving with a suspended license, improper registration, speeding, not wearing a seatbelt, running a stop sign, and careless driving (Tr. at 35, 40, 48). Defendant was charged with 1st degree tampering with a motor vehicle and receiving stolen property (Tr. at 48).

## II. INVENTORY SEARCH

Defendant argues that the search was not a valid search incident to arrest. However, defendant does not address any of the other exceptions to the search warrant requirement.

The Supreme Court has recognized an exception to the warrant requirement for searching a vehicle lawfully impounded by law enforcement officers. Cady v. Dombrowski, 413 U.S. 433, 446-48 (1973). "Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the police," which does not require a warrant. United States v. Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004) (quoting Cady v. Dombrowski, 413 U.S. at 441).

The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy -- even a policy that provides officers with discretion as to the proper course of action to take -- and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). These parameters are designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Petty, 367 F.3d at 1012 (internal quotation omitted).

7

Law enforcement may search a lawfully impounded vehicle to inventory its contents without obtaining a warrant. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."). The reasonableness of an inventory search is determined based upon the totality of the circumstances. United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005). Those circumstances include whether the search was conducted according to standardized procedures. South Dakota v. Opperman, 428 U.S. at 376.

When the driver of a car is arrested, the police may impound the vehicle and conduct an inventory search. United States v. Stephens, 350 F.3d 778 (8th Cir. 2003); United States v. Navarrete-Barron, 192 F.3d 786, 791-92 (8th Cir. 1999).

In this case defendant was arrested after he was observed driving 70 to 100 miles per hour in residential areas with 25 mph speed limits, he was in a stolen car, and he sped away from police despite being chased by police cars with lights and sirens operating. There can be no question that defendant was lawfully stopped. A law enforcement officer who observes a traffic offense, however, minor, has probable cause to stop the driver of a vehicle. United States v. Williams, 429 F.3d 767 (8th Cir. 2005); United States v. Barragan, 379 F.3d 524, 528 (8th Cir.

2004); United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003); United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001); United States v. Woodall, 938 F.2d 834 (8th Cir. 1991); United States v. Cortez, 935 F.2d 135, 142 (8th Cir. 1991). A law enforcement officer can even lawfully stop an automobile merely to warn the driver of a traffic violation. United States v. Webb, 533 F.2d 391 (8th Cir. 1976); United States v. Geelan, 509 F.2d 737, 743-44 (8th Cir. 1974), cert. denied, 421 U.S. 999 (1975). Stopping a vehicle for failing to signal before turning is permitted. United States v. Davis, 457 F.3d 817, 821-822 (8th Cir. 2006), cert. denied, 549 U.S. 1258 (2007); United States v. Rodriquez-Lopez, 444 F.3d 1020, 1023 (8th Cir. 2006).

The undisputed evidence establishes that defendant was lawfully stopped and that the car was towed pursuant to police policy which provides for towing when a car is stolen, as was the case here.

*IV. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in section III, I conclude that (1) the search of defendant's car was a lawful inventory search, and (2) his subsequent statement was not the fruit of an illegal search. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order

9

denying defendant's motion to suppress the evidence seized and defendant's statement.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

                                        /s/ Robert E. Larsen
                                        ROBERT E. LARSEN
                                        United States Magistrate Judge

Kansas City, Missouri
August 24, 2011