IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 11-00002-01-CR-W-ODS |
| JOSEPH M. CHAVEZ, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION TO DENY
## DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Before the court is defendant's motion to suppress evidence seized on July 12, 2010. I find that the search of defendant's car was a lawful search incident to arrest and was lawful pursuant to the automobile exception to the warrant requirement. Therefore, defendant's motion to suppress should be denied.

## *I.   BACKGROUND*

On July 12, 2010, defendant was a passenger in a vehicle stopped for a traffic violation. After an officer observed defendant making furtive movements, he was asked to exit the vehicle. For officer safety, a pat-down search was conducted and a meth pipe was found in defendant's pocket. The officer searched the area around the front passenger seat where defendant had been sitting and discovered a loaded .357 under the passenger seat.

On January 4, 2011, an indictment was returned charging defendant with one count of possessing a firearm while an

unlawful user of or addicted to methamphetamine and marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). On June 15, 2011, a superseding indictment was returned charging three counts of possessing a firearm while an unlawful user of or addicted to methamphetamine and marijuana, one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of carrying a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c).

On July 4, 2011, defendant filed the instant motion to suppress (document number 40). On July 15, 2011, the government filed a response (document number 44) arguing that the search of defendant's vehicle was valid for officer safety and pursuant to the automobile exception to the warrant requirement.

On July 18, 2011, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Stefan Hughes. The defendant was present, represented by Michael Walker. Officer Bryan Britten, Kansas City, Missouri, Police Department, testified; and a report of Officer Britten was admitted as defendant's exhibit 1.

## II. *EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1.   At approximately 6:45 p.m. on July 12, 2010, Officer Bryan Britten and his partner, Officer Gaddis, observed a small SUV fail to signal at the intersection of Winn Road and North Walrond (Tr. at 5).  The officers were in police uniforms and were in a marked police car (Tr. at 5).  The officers turned on their lights to signal the car to pull over (Tr. at 5).  At that time, they had no reason to suspect any criminal activity other than the traffic violation (Tr. at 13).

2.   While Officer Gaddis notified the dispatcher of the car stop, Officer Britten got out of the patrol car and stood where he could observe the occupants of the car (Tr. at 6).  He observed defendant, who was the passenger in the car, making furtive movements toward the glove compartment and the floorboard (Tr. at 7).  Officer Britten suspected defendant was retrieving or concealing a weapon (Tr. at 7).

3.   Officer Britten signaled to his partner that he was going to take the passenger out of the car (Tr. at 7).  He approached the passenger side and either opened the door or had defendant open the door, and he had defendant step out (Tr. at 7).  Because of defendant's movements Officer Britten was very concerned for his safety and the safety of Officer Gaddis (Tr. at 7).

4.   As soon as defendant got out of the car and looked at Officer Britten, the officer recognized defendant (Tr. at 7-8).

He lived in an apartment complex that Officers Britten and Gaddis patrolled (Tr. at 8). Although Officer Britten had seen defendant a few times, he had never had occasion to stop him (Tr. at 8).

5. Officer Britten had been told by a confidential source that defendant always carries a gun, has bragged about being involved in armed actions, and has threatened the confidential source a few times with bodily harm (Tr. at 8, 9). Officer Britten also knew that defendant had a previous arrest for having a gun and narcotics on May 26, 2010, and he had heard that defendant bragged about having committed three murders[1] (Tr. at 8-9).

6. The driver of the car was Iyad Alghusain, whom Officer Britten had previously arrested on a warrant for methamphetamine (Tr. at 11). He had bragged about being on the terrorist watch list and being a personal bodyguard to Yasser Arafat and had had FBI agents' cards in his day planner (Tr. at 11).

7. Officer Britten handcuffed defendant and patted him down for officer safety due to his reputation and furtive movements (Tr. at 9-10). During the pat-down search, Officer Britten felt a cylindrical object with a bulb at the end which he

---

[1]Officer Britten testified that a second confidential source reported that defendant bragged about committing three murders, but that source provided the information after defendant's arrest (Tr. at 9, 16). Officer Britten further testified, "But we'd heard that he'd bragged about it before." (Tr. at 9).

4

easily recognized as a meth or crack pipe based on his experience (Tr. at 10). Officer Britten recovered the meth pipe (Tr. at 10). While defendant was by the hood of the police car, Officer Britten searched the area in the car where defendant was making the furtive movements -- the glove compartment and underneath the seat (Tr. at 10, 15). He recovered a loaded .357 handgun concealed under the passenger seat (Tr. at 10, 18). This area of the car was searched due to the possibility of Mr. Alghusain being released from the scene, since he only had a traffic violation, and defendant being released on a signature bond, which is typical for a meth pipe offense -- the officers did not want either of them to have access to whatever had been placed there (Tr. at 10-11, 17).

8.  The gun that was recovered had been stolen from Kansas City, Kansas; therefore, defendant was placed under arrest for possession of a stolen weapon (Tr. at 12).

9.  Sometime after he got out of the car, Iyad Alghusain stated that his brother was the prime minister of Palestine and he bragged about being on the no-fly list (Tr. at 11, 16).

### III. INITIAL STOP

Defendant, as a passenger in the car stopped by police, has standing to challenge the stop. The Supreme Court found in Brendlin v. California, 5512 U.S. 249 (2007), that a passenger in a car is seized when the car is stopped by police, and the

5

passenger is entitled to challenge the stop.

A law enforcement officer who observes a traffic offense, however minor, has probable cause to stop the driver of a vehicle. United States v. Shafer, 608 F.3d 1056, 1062 (8th Cir. 2010); United States v. Williams, 429 F.3d 767 (8th Cir. 2005); United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004); United States v. Mallari, 334 F.3d 765, 766 (8th Cir. 2003); United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). A law enforcement officer can even lawfully stop an automobile merely to warn the driver of a traffic violation. United States v. Webb, 533 F.2d 391 (8th Cir. 1976); United States v. Geelan, 509 F.2d 737, 743-44 (8th Cir. 1974), cert. denied, 421 U.S. 999 (1975).

Stopping a vehicle for failing to signal before turning is permitted. United States v. Davis, 457 F.3d 817, 821-822 (8th Cir. 2006), cert. denied, 549 U.S. 1258 (2007); United States v. Rodriguez-Lopez, 444 F.3d 1020, 1023 (8th Cir. 2006).

To determine whether a stop is pretextual, an objective assessment of the officer's actions must be made. Woodall, 938 F.2d at 837; Cortez, 935 F.2d at 142. In this case, Officer Britten observed the car in which defendant was riding turn without signaling. Officer Britten had an objective and legitimate reason to stop the car. See Cortez, 935 F.2d at 142.

Therefore, the stop of defendant's car by Officer Britten was lawful due to the driver turning without signaling.

## IV. PAT-DOWN SEARCH

When concerned for their safety, police officers may order a passenger to get out of a vehicle and may perform a pat-down search upon reasonable suspicion that the person may be armed and dangerous. United States v. Oliver, 550 F.3d 734, 737 (8th Cir. 2008). Law enforcement officers may conduct

> a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. And in determining whether the officer acted reasonably in such circumstances, due weight must be given . . . to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience.

Terry v. Ohio, 392 U.S. 1, 27 (1968)(citations omitted).

An officer's experience that narcotics are often associated with weapons, his knowledge of a passenger's prior narcotics violations, and his observations of the passenger's surreptitious movements provide an officers who lawfully stops a car with reasonable suspicion to frisk the passenger. United States v. Collier, -- F.3d --; 2011 WL 2150223 (8th Cir., June 2, 2011). Likewise, an officer may conduct a pat-down search if he sees a passenger rise off the seat and place his hand behind his back as if he were placing something underneath or beneath him, United

7

States v. Davis, 457 F.3d 817, 822-23 (8th Cir. 2006), or if he observes a passenger suspected of drug manufacturing of making movements toward the floorboards. United States v. Woodall, 938 F.2d 834, 837 (8th Cir. 1991).

In this case the undisputed evidence establishes that Officer Britten observed defendant making furtive movements toward the glove compartment and the floor of the car and feared for his own safety and that of his partner. Upon seeing defendant's face, Officer Britten recognized him. A confidential source had told Officer Britten that defendant always carried a gun, had bragged about being involved in armed actions, and had threatened the confidential source a few times with bodily harm. Officer Britten knew that defendant had a previous arrest for having a gun and narcotics on May 26, 2010, and he had heard that defendant bragged about having committed three murders. Considering the totality of the circumstances, I find that Officer Britten had reasonable suspicion that defendant may be armed and dangerous and therefore was entitled to perform a pat-down search.

If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless

seizure would be justified by the same practical considerations that inhere in the plain-view context. Minnesota v. Dickerson, 508 U.S. 306, 375-76 (1993). Officer Britten testified that the pipe was "easily recognizable" and that he has encountered meth pipes or crack pipes before and there was no question in his mind that the object he felt in defendant's pocket was either a meth pipe or a crack pipe (Tr. at 10). Therefore, seizure of the pipe from defendant's pocket was lawful.

## V. SEARCH OF THE VEHICLE

Plaintiff argues that the search of the vehicle was unlawful and therefore the loaded .357 handgun should be suppressed.

### A. AUTOMOBILE EXCEPTION

Defendant argues that the search of the glove compartment and the area around the passenger seat of the car was a valid search pursuant to the automobile exception to the search warrant requirement.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967) (footnotes omitted). "One such exception is the automobile exception, which allows law enforcement to 'search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of

9

criminal activity.'" United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011) (quoting United States v. Davis, 569 F.3d 813, 817 (8th Cir. 2009)). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Donnelly, 475 F.3d 946, 954 (8th Cir. 2007) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

In this case police knew the following:

- Defendant made furtive movements as if he were hiding a weapon in the glove compartment or under his seat

- According to a confidential informant, defendant always carried a gun, bragged about being involved in armed actions, and threatened the informant a few times with bodily harm

- Defendant had a previous arrest less than two months earlier for possessing a gun and narcotics

- Officer Britten had heard that defendant bragged about having committed three murders

- Officer Britten had previously arrested the driver of the car on a warrant for a methamphetamine offense

- The driver had bragged about being on the terrorist watch list and being a personal bodyguard to Yasser Arafat, and he had FBI agents' cards in his day planner

- Defendant had a methamphetamine or crack pipe in his possession

To support a probable cause determination, officers may rely on an informant's tip if the informant has provided reliable information in the past or if his tip is independently corroborated. United States v. Hambrick, 630 F.3d 742, 747 (8th

10

Cir. 2011); United States v. Morrison, 594 F.3d 626, 632 (8th Cir. 2010) ("When an informant's information is at least partly corroborated attacks upon credibility and reliability are not crucial to the finding of probable cause"). Furthermore, "When an informant['s] . . . tip was independently corroborated, a court may deem the informant's tip sufficiently reliable to support a probable cause determination." Id.; United States v. Caswell, 436 F.3d 894, 898 (8th Cir. 2006); United States v. Leppert, 408 F.3d 1039, 1041 (8th Cir. 2005). Here the informant's information was partially corroborated by defendant's arrest a few weeks earlier during which he was found in the possession of a gun. In addition, based on Officer Britten's experience, he believed that defendant was attempting to hide a weapon due to his furtive movements upon being pulled over by a police officer.

Based on all of the information known to Officer Britten at the time of the automobile search, including the information supplied by the informant, I find that there was probable cause to believe that a weapon would be found in the front passenger area of the car. Therefore, the automobile exception to the warrant requirement justified the search which resulted in seizure of the loaded firearm.

**B.    SEARCH INCIDENT TO ARREST**

Under Arizona v. Gant, 556 U.S. 332 (2009), police may search the passenger compartment of a vehicle incident to arrest only if (1) the arrestee might have access to the vehicle at the time of the search, or (2) it is reasonable to believe the vehicle contains evidence of the offense of the arrest.

**1.    ACCESS TO THE VEHICLE**

The Eighth Circuit has subsequently held that even if the arrestee has no access to the vehicle at the time of the search,

> [where] other occupants were outside of the vehicle at the time of the search, but absent an arrest . . . would have been free to reenter the vehicle and pose a danger to the officers, . . . a reasonably prudent officer on the scene would be warranted in believing that [the arrestee] and his unsecured passengers were dangerous and might access the vehicle to gain immediate control of weapons. . . . [T]he search was valid either as a search incident to arrest under Gant or as a matter of safety for the officers under [Michigan v.] Long,[2] [463 U.S. 1032 (1983)].

United States v. Salamasina, 615 F.3d 925, 930 (8th Cir. 2010), citing United States v. Goodwin-Bey, 584 F.3d 1117, 1121 (8th Cir. 2009).

In this case, the driver of the vehicle, Alghusain, was not arrested and there is no evidence that he was placed in handcuffs.  Officer Britten had reason to believe that Alghusain

---

[2]Michigan v. Long held that an officer may search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons.

was dangerous because Office Britten had previously arrested Alghusain for a methamphetamine offense and he had previously bragged about being on a terrorist list.  Officer Britten testified that Alghusain had only failed to signal before making a turn; therefore, he was not going to be placed under arrest and would continue to have access to the car.  Under these circumstances I find that Officer Britten was warranted in believing that Alghusain was dangerous and might access the vehicle to gain immediately control of any weapon that Officer Britten suspected had been hidden in the passenger area of the car.

## *2.  EVIDENCE OF THE OFFENSE OF ARREST*

After Office Britten recovered the meth pipe from defendant's pocket, Officer Britten was entitled to search the car for further evidence relevant to the drug offense for which defendant had been arrested.  United States v. Barnum, 564 F.3d 964, 970 (8th Cir. 2009).  In Barnum, the defendant was driving a rental car and was stopped and cited for a traffic violation.  He voluntarily consented to a search of his person during which police found a crack pipe.  Barnum was placed under arrest, and the Eighth Circuit held that a subsequent search of the vehicle was lawful incident to Barnum's arrest pursuant to the second prong of Arizona v. Gant, 556 U.S. 332 (2009).  See also United States v. Lopez, 2011 WL 2713249 (E.D. Tenn. July 13, 2011) (pat-

down search revealed crack pipe which then permitted police to search vehicle for evidence of that drug crime); United States v. Bradford, 2009 WL 3754174 (E. D. Wisc. November 5, 2009) (after finding crack pipe on Bradford's person, police were entitled to search vehicle for evidence of that drug offense).

Because a methamphetamine pipe was found on defendant's person, Office Britten was entitled to search the vehicle for evidence of that drug crime.

## *VI. CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III through V, I conclude that (1) defendant, as a passenger, had standing to challenge the stop of the car; (2) stopping a vehicle for failing to signal before turning is permitted; (3) Officer Britten had reasonable suspicion that defendant may be armed and dangerous and therefore was entitled to perform a pat-down search, (4) the identity of the meth pipe was immediately apparent and it was therefore lawfully seized; (5) the search of the vehicle was lawful pursuant to the automobile exception; (6) the search of the vehicle was lawful incident to defendant's arrest because (a) Officer Britten was warranted in believing that Alghusain was dangerous and might access the vehicle to gain immediately control of any weapon, and (b) because a methamphetamine pipe was found on defendant's person, Office Britten was entitled to

search the vehicle for evidence of that drug crime.  Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

*/s/ Robert E. Larsen*
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 25, 2011