IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Criminal Action No. |
| ) | 11-00002-01-CR-W-ODS |
| JOSEPH M. CHAVEZ, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION TO DENY**
**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

Before the court is defendant's motion to suppress evidence seized on May 26, 2010. I find that defendant was lawfully arrested and the search of the car was a lawful inventory search. Therefore, defendant's motion to suppress should be denied.

*I.  BACKGROUND*

On May 26, 2010, officers attempted to execute an arrest warrant by signaling for defendant's car to stop. Defendant ignored officers and fled at a high rate of speed, eventually crashing the car. He fled on food but was apprehended and placed under arrest for eluding police. Because the car was in the street and inoperable, it was towed. An inventory search was conducted and police recovered methamphetamine; a Glock 9mm magazine with 31 rounds of live ammunition; two loaded guns, one without a serial number; 20 live rounds of ammunition for an AK-47 or SKS-style assault rifle; 47 rounds of .38 caliber ammunition; and five shotgun shells.

On January 4, 2011, an indictment was returned charging defendant with one count of possessing a firearm while an unlawful user of or addicted to methamphetamine and marijuana, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). On June 15, 2011, a superseding indictment was returned charging three counts of possessing a firearm while an unlawful user of or addicted to methamphetamine and marijuana, one count of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and one count of carrying a firearm during and in relation to a drug-trafficking offense, in violation of 18 U.S.C. § 924(c).

On July 5, 2011, defendant filed the instant motion to suppress, arguing that there was no probable cause to arrest defendant and the search of his car was not a valid search incident to arrest (document number 41). On July 15, 2011, the government filed a response (document number 45) arguing that the search of defendant's vehicle was a valid inventory search.

On July 18, 2011, I held a hearing on defendant's motion. The government appeared by Assistant United States Attorney Stefan Hughes. The defendant was present, represented by Michael Walker. The following witnesses testified:

1. Sergeant Charles Huth, Kansas City, Missouri, Police Department

2. Officer Aaron Hendershot, Kansas City, Missouri, Police Department

2

In addition, the following exhibits were admitted:

    P. Ex. 1   Photo looking eastbound on 13th Street and showing a stop sign at Benton which defendant ran

    P. Ex. 2   Photo showing closer view of stop sign at 13th and Benton and the concrete structure into which defendant crashed his car

    P. Ex. 3   Photo showing the fence over which defendant jumped before he ran down to Highway 70 which is shown in the background

    P. Ex. 4   Photo showing intersection of 13th and Benton with concrete structure on the right

    P. Ex. 5   Photo showing the freeway overpass, 13th Street, and the concrete pillar into which defendant crashed

    P. Ex. 6   Photo showing another view of the intersection of 13th Street and Benton with the concrete pillar

    P. Ex. 7   Photo showing closer view of concrete pillar into which defendant crashed

    P. Ex. 8   Kansas City, Missouri, Police Department procedural instruction for towing and taking protective custody of vehicles and their contents

    P. Ex. 11  Document showing that the Honda crashed by defendant was owned by Stacey Bowles

    P. Ex. 12  Property inventories from the vehicle search in May 2010

## *II.* *EVIDENCE*

On the basis of the evidence presented at the suppression hearing, I submit the following findings of fact:

1. On May 26, 2010, at approximately 5:04 p.m., undercover detectives requested that Sergeant Charles Huth conduct a car check on a 1992 Honda bearing license plate KF3-C2M in the area

of St. John and Jackson Street in Kansas City, Missouri (Tr. at 59). The driver of the vehicle had been seen leaving a residence, and he was wanted on a felony warrant (Tr. at 76-77, 84-85). Sergeant Huth was in an unmarked police vehicle with emergency lights and a siren (Tr. at 60). Sergeant Huth has never had a problem with drivers not recognizing his car as a police car once the lights and siren have been activated (Tr. at 60).

    2.    Sergeant Huth observed the Honda, saw that there were two people inside, and activated his lights and siren; but the Honda did not stop (Tr. at 60-61, 76). He followed it westbound on St. John and then southbound on another street, then westbound on Anderson (Tr. at 60-61). At that point, the Honda was picking up speed and demonstrating a high disregard for other people (Tr. at 61). Sergeant Huth believed it was getting too dangerous to keep chasing the Honda which was going approximately 75 miles per hour[1] in a 25 mph zone (Tr. at 61-62). Right at that moment, defendant, the driver of the Honda, almost hit a child walking across the street at Anderson and Indiana (Tr. at 61). Therefore, Sergeant Huth stopped pursuing him (Tr. at 61). Sergeant Huth was shocked that defendant had not killed someone

---

[1] Sergeant Huth looked at his speedometer right before defendant almost hit the child, and his speedometer registered 75 mph (Tr. at 62).

4

due to his extremely reckless manner of driving through neighborhoods and the pedestrians out at that time (Tr. at 62).

    3.    Sergeant Huth had been communicating with other officers in his squad, and they determined that defendant would probably either try to go to Kansas or try to get to the highway (Tr. at 62).  They set up positions close to highway I-70 (Tr. at 63).  Officers Aaron Hendershot and Andy Keil were in an unmarked Crown Victoria with lights and siren, and they observed defendant on 13th Street heading east toward Benton (Tr. at 63, 87-88).  Benton is a very busy street -- one of the few streets that cross I-70 in that area (Tr. at 68, 90-91).

    4.    Sergeant Huth got behind defendant again and turned on his lights and siren (Tr. at 63).  Officers Hendershot and Keil had their siren and emergency lights on and were going southbound on Benton when they saw defendant run the stop sign at a high rate of speed going eastbound on 13th; defendant tried to turn right but lost control of the car (Tr. at 63, 65, 89).  There is a huge ornamental-type concrete pillar in a park at that intersection, and defendant's car slid into the pillar and crashed (Tr. at 63, 65, 89-90, 99).  The car was half on the sidewalk where it landed, and it was inoperable (Tr. at 65, 99).

    5.    The passenger in the Honda tried to jump out the passenger side window, tripped, and fell (Tr. at 63, 90, 91).  Defendant jumped out the passenger side window from the driver's

seat, jumped over the passenger who had fallen, took off running southbound, and then cut back eastbound through the park (Tr. at 63, 90, 91). Sergeant Huth chased him through the park to a seven-foot tall chainlink fence that separates the park from a slope down to Highway I-70 (Tr. at 64). Defendant jumped the fence, so Huth went around the other side to cut him off, thinking defendant was going to cross the highway (Tr. at 64). Sergeant Huth came out toward the highway and saw defendant running down I-70 westbound trying to flag vehicles down (Tr. at 64). Defendant was waving money at cars trying to get someone to stop and pick him up (Tr. at 64). One of the cars defendant tried to flag down was an undercover sergeant working with Sergeant Huth (Tr. at 64). Two other officers intercepted defendant who was taken into custody on the highway (Tr. at 64, 92). Defendant was wearing an empty holster when he was apprehended (Tr. at 66).

    6.    Officer Hendershot took defendant's passenger into custody at the vehicle and placed him in handcuffs (Tr. at 63, 92, 99). He was identified as Omar Delgado-Maria, and he was holding a handgun magazine when he was apprehended (Tr. at 63, 91, 100).

    7.    Defendant was arrested for eluding police, and he had drugs and a gun in his car (Tr. at 66). Sergeant Huth went to talk to defendant, just to tell him what was going to happen and

to explain the booking procedure (Tr. at 66, 82). He did not ask defendant about the gun in the car (Tr. at 66, 82). Defendant said, "Hey the Glock in the car is mine." (Tr. at 66). Defendant had not been advised of his <u>Miranda</u> rights (Tr. at 82).

8. Because defendant's car was not properly parked and was not operable, and because both occupants of the car had been taken into custody, Kansas City, Missouri, Police Department policy is to have the vehicle towed (Tr. at 65, 70, 91, 93, 98). The Kansas City procedure provides that "A content inventory will be conducted on all vehicles towed to the city tow lot unless otherwise instructed by a supervisor." (Tr. at 71; P. Ex. 8). The procedure also states that, "Vehicles will be towed when the vehicle is known or believed to have been used in the commission of a crime and has evidentiary value unless it is processed at the scene and can be released to the owner or operator." (Tr. at 71; P. Ex. 8). The policy further states that a vehicle may be towed in the officer's discretion when (1) it is "upon a street [and] is so disabled as to constitute an obstruction to traffic and the person in charge of the vehicle is, by reason of physical injury or condition, incapacitated to such an extent as to be unable to provide for its custody or removal", (2) it "is parked illegally or placed in such a manner as to constitute a hazard or obstruction to the movement or traffic, and when a traffic summons has been affixed to the vehicle or presented to the owner

or operator", and (3) "the driver of any vehicle is taken into custody by the police department and such vehicle would thereby be left unattended upon a street or highway" (Tr. at 71-72; P. Ex. 8).

9.  Officer Andy Keil determined that the Honda was registered to a Stacey Bowles (Tr. at 73, 97; P. Ex. 11).

10. An inventory search was conducted prior to the towing (Tr. at 65, 93). During the search, officers found black gloves; a ski mask; an electronic scale; Ziploc bags; methamphetamine; a Glock 9mm magazine with 31 rounds of live ammunition; and two guns, one of which had fallen out of defendant's holster (Tr. at 66, 93, 94). The serial number had been scratched off one of the guns, a Smith & Wesson semiautomatic .40 caliber handgun with 14 live rounds in the magazine and one in the chamber (Tr. at 93-95). The other weapon was a Glock 9mm pistol with 18 live rounds in it (Tr. at 95). Twenty live rounds of ammunition for an AK-47 or SKS-style assault rifle, 47 rounds of .38 caliber ammunition, and five shotgun shells were found in the trunk (Tr. at 94-96).

### III. INITIAL ATTEMPT TO STOP

Defendant argues that "SGT Huff *[sic]* offers no reason for his attempted 'car check' of 05-26-2010." (plaintiff's motion at p. 3). Plaintiff then cites Terry v Ohio, 392 U.S. 1 (1968), Florida v. Royer, 406 U.S. 491 (1983), and state law cases to support his proposition that Sergeant Huth did not have

8

reasonable suspicion to attempt to stop defendant's car. Defendant's position is without merit.

"[E]xcept in those situations in which there is at least articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or *an occupant is otherwise subject to seizure for violation of law*, stopping an automobile and detaining the driver in order to check his driver's license and the registration of the automobile are unreasonable under the Fourth Amendment. <u>Delaware v. Prouse</u>, 440 U.S. 648, 663 (1979) (emphasis added). In this case, Sergeant Huth was told to stop defendant's car because the driver had been seen leaving a residence and was wanted on a felony warrant. Sergeant Huth was therefore justified in stopping the car and checking the driver's identification to see if he was indeed the person wanted in the warrant.

## *IV. PROBABLE CAUSE TO ARREST*

In <u>Atwater v. City of Ago Vista</u>, 532 U.S. 318, 354 (2001), the Court held that:

> If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

"[W]arrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution". <u>Virginia v. Moore</u>, 553 U.S. 164 (2008); <u>Rose v. City of Mulberry</u>,

9

Ark., 533 F.3d 678, 680 (8th Cir. 2008) (holding that police officer had probable cause to arrest defendant for reckless driving).

The undisputed evidence is that defendant was driving in an extremely reckless manner, to the point that Sergeant Huth was surprised defendant did not kill someone. Defendant sped through a 25 mph zone at 75 miles per hour while being pursued by police. Later in the chase, he sped through a stop sign at a high rate of speed while being pursued by police. He was driving in such a reckless manner that he was unable to make a turn and crashed the car into a concrete pillar. Clearly officers had probable cause to arrest defendant for eluding police and for reckless driving.

## V.   INVENTORY SEARCH

Defendant argues that the search was not a valid search incident to arrest. However, defendant does not address any of the other exceptions to the search warrant requirement.

The Supreme Court has recognized an exception to the warrant requirement for searching a vehicle lawfully impounded by law enforcement officers. Cady v. Dombrowski, 413 U.S. 433, 446-48 (1973). "Impoundment of a vehicle for the safety of the property and the public is a valid 'community caretaking' function of the police," which does not require a warrant. United States v. Petty, 367 F.3d 1009, 1011-12 (8th Cir. 2004) (quoting Cady v. Dombrowski, 413 U.S. at 441).

The impounding of a vehicle passes constitutional muster so long as the decision to impound is guided by a standard policy -- even a policy that provides officers with discretion as to the proper course of action to take -- and the decision is made "on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987). These parameters are designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." United States v. Petty, 367 F.3d at 1012 (internal quotation omitted).

Law enforcement may search a lawfully impounded vehicle to inventory its contents without obtaining a warrant. See South Dakota v. Opperman, 428 U.S. 364, 376 (1976); United States v. Pappas, 452 F.3d 767, 771 (8th Cir. 2006) ("An inventory search by police prior to the impoundment of a vehicle is generally a constitutionally reasonable search."). The reasonableness of an inventory search is determined based upon the totality of the circumstances. United States v. Beal, 430 F.3d 950, 954 (8th Cir. 2005). Those circumstances include whether the search was conducted according to standardized procedures. South Dakota v. Opperman, 428 U.S. at 376.

When the driver of a car is arrested, the police may impound the vehicle and conduct an inventory search. United States v.

Stephens, 350 F.3d 778 (8th Cir. 2003); United States v. Navarrete-Barron, 192 F.3d 786, 791-92 (8th Cir. 1999).

The undisputed evidence establishes that defendant was lawfully arrested and the car was towed pursuant to police policy which provides for towing when a car is inoperable, improperly parked, and when the occupants are taken into custody, as was the case here.

## VI. *CONCLUSION*

Based on the above-stated findings of fact and the law as discussed in sections III through V, I conclude that defendant was lawfully arrested and the search of his car was a lawful inventory search. Therefore, it is

RECOMMENDED that the court, after making an independent review of the record and the applicable law, enter an order denying defendant's motion to suppress evidence.

Counsel are advised that, pursuant to 28 U.S.C. § 636(b)(1), each has ten days from the date of this report and recommendation to file and serve specific objections.

/s/ Robert E. Larsen
ROBERT E. LARSEN
United States Magistrate Judge

Kansas City, Missouri
August 26, 2011